UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Darlene E. DeBlois Living          *
Trust and Darlene DeBlois         *
and David True,                   *
                                  *
     Plaintiffs                   *
                                  *
v.                                *      Civil Action No._____
                                  *
                                  *
Saint-Gobain Performance          *
Plastics Corporation              *
                                  *
     Defendant                    *

<u>C0MPLAINT AND JURY DEMAND</u>


     Plaintiffs, respectfully complaint against defendant,

Saint-Gobain Performance Plastics Corporation ("Saint-Gobain")

and allege as follows:


**<u>STATEMENT OF THE CASE</u>**


     1.   This action is brought by the plaintiffs who have been

damaged and continue to be damaged by the wrongful conduct of

defendant, Saint-Gobain, arising out of defendants use,

handling, discharge, and disposal of perflourooctanoic acid

("PFOA"), a toxic perfluorinated chemical, in Merrimack, New

Hampshire, which has resulted in the severe contamination of the

plaintiffs' groundwater aquifer, soils, and drinking water

supply wells.  Based upon information and belief, defendant
utilized PFOA in its manufacturing processes at its facility in
Merrimack, New Hampshire and discharged significant amounts of
PFOA into the environment through air emissions thereby causing
contamination of the plaintiffs' property and groundwater.
Plaintiffs bring negligence, nuisance, trespass, battery, and
strict liability claims against the defendant due to the
diminution in property value, loss and use of enjoyment of
property, annoyance, upset, aggravation, and inconvenience and
other damages which they have suffered as a result of the PFOA
contamination caused by the defendant.  Plaintiffs also seek
equitable and injunctive relief to compel defendant to establish
and implement remedial measures sufficient to permanently
prevent the further contamination, and eliminate the current
contamination of plaintiffs' property and/or private drinking
water supplies.  Due to the high levels of contamination to
plaintiffs' property, and the plaintiffs being the only
residence where the defendant has voluntarily placed a point of
entry filtration system on both of the plaintiffs' drinking
water systems, the plaintiffs' elect to opt out of the recently
filed class-action suit and seek to maintain an independent
cause of action.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action in accordance with 28 U.S.C. §1332(a), because the plaintiffs are citizens of the State of New Hampshire and the defendant is a citizen of a different state, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a), because this action concerns damage to property located in this District, because defendant has conducted substantial business in this District, has caused harm to the plaintiffs residing in this District, plaintiffs reside in this District, and a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this District.

## PARTIES

4.    Plaintiff, Darlene E. DeBlois Living Trust, is the owner of the property at 540 Charles Bancroft Highway, Litchfield, NH 03052.  Plaintiffs, Darlene DeBlois and David True, are citizens and residents of 540 Charles Bancroft Highway, Litchfield, NH 03052.  The property consists of a 40 acre farm located directly across from the defendant's

manufacturing facility separated by the Merrimack River.
Plaintiff, Darlene Deblois, has lived at said farm since she was
1 year old.  The plaintiffs train horses, show horses, lease a
lower field to a third party who grows corn, and conduct summer
camps for children on their horse farm.  On or about March 9,
2016, the plaintiffs' private drinking water wells were tested
which showed levels of PFOA at 350 parts per trillion (ppt) and
190 ppt along with numerous other perfluorinated compounds.
Plaintiffs were informed by the State of New Hampshire not to
drink their water.  The State of New Hampshire in March of 2016
dropped off a case of water for the plaintiffs to drink.
Plaintiffs had great difficulty providing water to their 18
horses.  Subsequently, the plaintiffs contacted the defendant
who voluntarily installed a point of entry water filtration
system for both their drinking water supply at their home and
drinking water supply for the horses at their barn.

5.    Defendant Saint-Gobain Performance Plastics
Corporation ("Saint-Gobain") is a California corporation with
its principal place of business located at 31500 Solon Road,
Solon, Ohio  44139.

6.    Defendant Saint-Gobain operates at least 45
manufacturing sites in 16 countries across North America,
Europe, and Asia, and has more than 4,000 employees.  Saint-
Gobain is a subsidiary of Compagnie de Saint-Gobain, a Paris-

4

based multinational corporation that is one of the top 100 industrial companies in the world, with $46 billion in sales in 2015.

7.   Defendant Saint-Gobain and its predecessor ChemFab Corporation, at various times, owns and operates plants at Merrimack, New Hampshire, Bennington, Vermont, and Hoosick Falls, New York.

8.   The New Hampshire Department of Environmental Services ("DES") has identified defendant, Saint-Gobain, as the party responsible for the contamination of the plaintiffs' groundwater aquifer and their private drinking water supply wells located on their property.  PFOA was utilized by the defendant and its predecessor, ChemFab Corporation in manufacturing operations at its Merrimack, New Hampshire facility.

## GENERAL AND FACTUAL ALLEGATIONS

### Saint-Gobain Plant in New Hampshire:

9.   Saint-Gobain operates a manufacturing facility at 701 Daniel Webster Highway, Merrimack, New Hampshire.  The Saint-Gobain facility is approximately 21 acres, with an office and manufacturer usage village building ("Saint-Gobain facility").

10.   Saint-Gobain has continuously owned and operated the facility from at least 2003.  The facility was previously owned by ChemFab which was acquired by the defendant in 2000.

11.   The defendant and its predecessors in interest, ChemFab, used chemicals containing Polytetrafluorethylene ("PTFE") and Perflurooctanoic acid ("PFOA") in manufacturing processes at the Plant.  Emissions from the plant, mostly by air, contain various forms of perfluoronated compounds.  These emissions have contaminated the plaintiffs' property and persons.


**Hazards of PFOA:**


12.   PFOA was and is a hazardous substance and pollutant.

13.   PFOA is a chemical compound that repels oil, grease and water.  PFOA is also known as "C8".

14.   PFOA was widely used to manufacture numerous products, including non-stick cookware, stain-resistant carpets and fabrics, water repellent clothing, paper and cardboard for packing, and fire-fighting foam.

15.   PFOA has been released into the environment during manufacturing processes that utilize the chemical, as well as during the production, use and disposal of products that contain PFOA.

6

16. The stable carbon-fluorine bonds that make PFOA such a prevalent industrial and consumer product also result in its persistence. There is no known environmental breakdown mechanism for PFOA. It is readily absorbed into biota and accumulates with repeated exposure.

17. PFOA has been classified by the United States Environmental Protection Agency ("EPA") as an Emerging Contaminant of Concern because of its threat to human health and the environment. PFOA's toxicity and persistence in the environment make it dangerous to human health and the environment. In May of 2016 the EPA issued a "Drinking Water Health Advisory for Perflurooctanoic acid ("PFOA"). Said advisory indicates that most major U.S. manufacturers have voluntarily agreed to phase out the production of PFOA. The EPA has issued a lifetime Drinking Water Health Advisory for PFOA of 70 ppt. PFOA in tests on monkeys, rats and mice has demonstrated developmental effects:

> (survival, body weight changes, reduced ossification, delays in eye opening, altered puberty, and retarded mammary gland development), liver toxicity(hypertrophy, necrosis, and effects on the metabolism and deposition of dietary lipids), kidney toxicity (weight), immune effects, and cancer (liver, testicular, and pancreatic). Overall, the toxicity studies available for PFOA demonstrate that the developing fetus is particularly sensitive to PFOA-induced toxicity. Human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-

induced hypertension and preeclampsia, and cancer
(testicular and kidney).

EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid
(PFOA) – May 2016, p. 9.

18.  Said study also indicates under EPA's *Guidelines for
Carcinogen Risk Assessment* (USEPA 2005), there is Suggested
Evidence of Carcinogenic Potential for PFOA:

Epidemiology studies demonstrate an association of
serum PFOA with kidney and testicular tumors among
highly exposed members of the general population.
Two chronic bioassays of PFOA support a positive
finding for the ability of PFOA to be tumorigenic
in one or more organs of rats, including the liver,
testes, and pancreas.  EPA estimated a cancer slope
factor of 0.07 per milligram per kilogram day (mg/kg-
day)[1] based on testicular tumors, and confirmed that
the lifetime HA based on noncancer effects is
protective of the cancer endpoint.

Id., p. 10.

19.  When humans are exposed to PFOA, this toxic chemical
binds to plasma proteins in the blood and is readily absorbed
and distributed throughout the body.  The liver and kidneys are
important binding and processing sites for PFOA, resulting in
physiologic changes to these and other organs.  Because of
strong carbon-fluorine bonds, PROA is stable to metabolic
degradation, resistant to biotransformation, and has a long

---

[1] For more information see http://water.epa.gov/drink/standards/hascience.cfm.

half-live in the body.  This toxic chemical accumulates in the body over time and causes long-term physiologic alterations and damage to the blood, liver, kidneys, immune system, and other organs.

20.   The human diseases caused by exposure to PFOA include cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol.  The association between exposure to PFOA and certain cancers has been reported by the C8 Health Project, an independent Science Panel charged with reviewing the evidence linking PFOA to diseases based on health research carried out in the a Mid-Ohio Valley population to PFOA and related chemicals as a result of releases from a DuPont chemical plant

21.   The C8 Science Panel identified kidney cancer and testicular cancer as having a "probable link" to PFOA exposure in the Mid-Ohio Valley population exposed to PFOA in drinking water.  Epidemiological studies of workers exposed to PFOA on the job support the association between PFOA exposure and both kidney and testicular cancer and also suggest associations with prostate and ovarian cancer and non-Hodgkin's lymphoma.  Rodent studies also support the link with cancer.  In 2006, the majority of EPA's Science Advisory Board expert committee recommended that PFOA be considered "likely to be carcinogenic to humans."

22.  Additionally, the C8 Science Panel found a probably link between exposure to PFOA and the following human diseases: thyroid disease, pregnancy-induced hypertension, ulcerative colitis, and high cholesterol.  Furthermore, in recent years, immunotoxicity of PFOA and related compounds has been demonstrated in a wide variety of species and models, including humans. For instance, a study of ninety-nine Norwegian children at age three found that maternal serum PFOA concentrations were associated with diseased vaccine responses, especially toward rubella vaccine, and increased frequencies of common cold and gastroenteritis.  The combined human and experimental evidence strongly supports adverse effects on immune functions at relatively low exposure levels.

23.  Upon information and belief, defendant, Saint-Gobain and its predecessor ChemFab Corporation have long been aware of the persistence and toxicity of PFOA, in part as a result of communications with manufacturers and users of this chemical and other perfluorinated chemicals.

**Saint-Gobain Plant in Vermont**:

24.  Defendant and its predecessor operated a plant in North Bennington, Vermont for approximately 20 years.  The Vermont plant and processes were similar to the plant in

Merrimack, New Hampshire.  Saint-Gobain used a process that
coated woven fiberglass and other fabric with Teflon material
using PTFE.  The PTFE coating was fused to the fabric in towers
utilizing high temperature ovens.  At all times relevant thereto
the defendants knew the towers were potential sources of odors,
visible emissions, and particulate emissions and hazardous air
contaminants.

25.  Prior to 2001, defendant Saint-Gobain and its
predecessor complained to the State of Vermont that the
environmental regulations governing the process used by the
defendant in its North Bennington Vermont plant were unnecessary
and of no benefit.  For example, in 1998 defendants predecessor
ChemFab claimed it contracted representatives of the State of
Vermont and told them that they had to make a "decision"
regarding the Saudi Arabian contract, which was a very large
contract and important to the company.  ChemFab told the
representatives that it would cost more to manufacture their
product for the contract in Vermont than in New Hampshire due to
Vermont's requirement for air pollution controls on towers.

26.  Between 1999 and 2001 defendant Saint-Gobain required
that the Vermont Agency of Natural Resources reduce or eliminate
certain conditions for environmental protection in the operation
of the North Bennington plant.  The State of Vermont would not
agree with the defendant to reduce its environmental standards

and continued to require that Saint-Gobain employ abaters with catalysts in place.

27.  In 2001, defendant Saint Gobain decided to close its North Bennington, Vermont facility, terminate dozens of employees and consolidated the manufacturing in Merrimack, New Hampshire as New Hampshire did not have the same environmental regulations and restrictions that were in place in Vermont.  At the time of the closure of the plant in Vermont, or shortly thereafter, defendant Saint-Gobain expanded operations at the Merrimack plant.

28.  PFOA has been detected in the wells of residential properties in the area of the former Saint-Gobain plant in North Bennington, Vermont.

29.  On or about May 6, 2016 a class action suit was filed against Saint-Gobain in the United States District Court, District of Vermont alleging similar contamination and requesting similar relief to that sought in this complaint. Saint-Gobain has recently requested the federal court in Vermont to stay or dismiss said complaint until Saint-Gobain's challenge in Vermont state court of Vermont's level of 20 ppt (the lowest of any agency) has been litigated.

**Saint-Gobain Plant in New York**:


30.   Defendant Saint-Gobain operates a plant in Hoosick Falls, New York that also used PFOA and perfluoronated compounds in the manufacturing process at that plant.  Private wells and the public drinking water supply in the area of the Saint-Gobain plant in Hoosick Falls have elevated levels of PFOA as a result of the operation of the plant there.

31.   On December 30, 2014, defendant Saint-Gobain notified the EPA that the presence of perfluoroctanoic acid (PFOA) was detected in recent tests of the public drinking water supplies for the Village of Hoosick Falls, New York and that Saint-Gobain processes fluoropolymers at the facility within the Village that were made with PFOA.  The notice further states that on December 12, 2014, Saint-Gobain became aware of PFOA measurements conducted by the Village in three wells used to supply drinking water to the community, located near one of their facilities and that one of the wells exceeded the EPA provisional health advisory.

32.   Groundwater sampling at or near defendant Saint-Gobain's plant located at 14 McCaffery Street in Hoosick Falls, New York found levels as high as 18,000 ppt.  The EPA established health advisory levels at no greater than 70 ppt.

33.   Despite defendant's knowledge of the use of PFTE and perfluronated compounds and emissions from their facilities in New York and Vermont, and their contamination of water sources in New York and Vermont, the defendant was negligent to have continued its operating facility in the manner that it did in New Hampshire which included, but was not limited to, preventing the release of perfluronated compounds from its Merrimack plant, test wells at or near the Merrimack Plant and warn the plaintiffs of the potential of contamination of their groundwater and soils at their horse farm.

**<u>New Hampshire Investigation</u>**:

34.   Based upon information and belief, it was not until February of 2016 that Saint-Gobain reported to the New Hampshire Department of Environmental Services ("DES") that the results of water tests at or near its Merrimack Plant had elevated levels of PFOA.  This is substantially after defendant knew or should have known of contamination of water wells in New York and Vermont.

35.   Throughout defendant's operation of its plant in Merrimack, New Hampshire, defendant and its predecessors in interest have released PFOA into the environment, failed to prevent said releases, failed to limit and remediate

contamination that has been released from the Merrimack, New Hampshire plant.  Said releases have contaminated plaintiffs' property and their water supply.

36.  Based upon information and belief, DES conducted tests of approximately 350 water wells and found widespread contamination of PFOA.  The DES provided bottle water to approximately 400 properties in Litchfield, Manchester, and Merrimack that are served by private wells, including the plaintiffs.

37.  On April 1, 2016 the DES sent a letter to Edward J. Canning, Director Environment, Health & Safety of the defendant. The DES notified the defendant that a number of public water systems and private drinking water wells (including the plaintiffs) have been found to contain elevated levels of perfluronated compounds (PFCs) in particular, PFOA.  The DES also notified the defendant that it has determined that the defendant is potentially responsible "for the cleanup of the site, restoration of impacted groundwater and drinking water, other actions necessary to protect the public health and environment, and any cost DES incurs for addressing the impacts of this contamination."  The letter outlined a number of critical steps that need to be taken to address the threats to public health and the environment imposed by the defendant's contamination.

38.   On or about April 13, 2016 Saint-Gobain responded to
DES through New Jersey counsel.  Defendant requested time to do
more investigation but agreed to do a number of requests,
including providing bottled water, conducting soil sampling,
submitting a work plan for sampling and an analysis for soils at
agricultural farms near the facility, retaining an environmental
consultant to submit a work plan, submit and reimburse the State
for the costs that the State has incurred.  In addition, the
defendant in said letter takes the position that 100 ppt should
be the standard for public water supply wells.  Defendant agreed
in said letter to fund the installation of a treatment system on
private wells within a mile radius of the facility where PFOA's
have been detected above 100 ppt.  The defendant has placed two
point of entry treatment systems at the plaintiffs' property.
One at the plaintiffs' well supply which provides water to its
barn and the other well supply which provides water to its
residence.  By admission of determining that 100 ppt should be
the standard, the defendant admits it is responsible for the
contamination of plaintiffs' drinking water.

39.   Throughout the course of its operation of its plant in
Merrimack, New Hampshire, the defendant and its predecessor in
interest, has released PFOA into the environment improperly,
failed to limit and remediate contamination that had been
released from the plant in Merrimack, and contaminated the

plaintiffs' soils and water supply.  Testing done by the DES has verified the that the presence of PFOA has contaminated the plaintiffs' drinking water in the amounts of 350 ppt for the barn water supply and 190 ppt for the residential water supply.

**<u>Federal and New Hampshire Levels for PFOA</u>:**

40.  On March 10, 2016, the governors of New Hampshire, New York and Vermont issued a joint letter to the EPA encouraging the EPA to "expeditiously review the best available science" and "provide uniform guidance" as to the appropriate PFOA level for drinking water.

41.  In May of 2016, the EPA issued a drinking water health advisory (supra, para. 17) at a recommended level of 70 ppt. Following the issuance of that advisory, New Hampshire updated its own groundwater rules, and has proposed to permanently update them to conform to the federal standard of 70 ppt.[2]

---

[2] N.H. Dept. of Envtl. Servs. (NH DES), Rulemaking Notice for Env-0v 603.03.
http://des.nh.gov/organizational/commissioner/legal/rulemaking/documents/env-ov603amd-rmd.pdf.

## CLAIMS FOR RELIEF

### COUNT 1: NEGLIGENCE

41.   Paragraphs 1-40 of this Complaint are hereby realleged and incorporated by reference herein.

42.   Defendant Saint-Gobain owed a duty to the plaintiffs to exercise due and reasonable care in its use, handling, disposal and discharge of PFOA and other perfluorinated compounds and to prevent or minimize any discharge or release of PFOA and other perfluorinated compounds into the surrounding environment, including the air, soils, surface water, and ground water, and in particular into the groundwater aquifer which is relied upon by the plaintiffs as a source of their potable water supply.

43.   Defendant Saint-Gobain knew or reasonably should have known that the use of PFOA and other perfluorinated compounds in its manufacturing processes and/or discharge or release of PFOA and other perfluorinated compounds into the environment required adequate safety precautions to ensure that PFOA was not released into the surrounding environment.

44.   Defendant Saint-Gobain knew or reasonably should have known that the use of PFOA and other perfluorinated compounds in its manufacturing process and/or discharge or release of PFOA

and other perfluorinated compounds into the environment was potentially hazardous to human health and the environment.

45.  Defendant Saint-Gobain breached its foregoing duties owed to the plaintiffs by failing to exercise due care in its use and handling of PFOA and other perfluorinated compounds and by discharging and disposing of PFOA and other perfluorinated compounds into the environment in a manner that resulted in the contamination of the air, soils, the plaintiffs' groundwater aquifer, the plaintiffs' private drinking water supply wells, and the plaintiffs' property.  Plaintiffs have ingested PFOA and other perfluorinated compounds and will have to engage in medical monitoring to discovery any personal injury.

46.  These unsafe levels of PFOA and other perfluorinated compounds in the plaintiffs' private drinking water supply have deprived the plaintiffs of potable water and resulted in a reduction of the plaintiffs' property values.

47.  As a direct, proximate and foreseeable result of defendant's breach, plaintiffs have suffered damages in the form of real property damage, out-of-pocket expenses, loss of use and enjoyment of their property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation, inconvenience, for which defendant Saint-Gobain is liable in damages.

## COUNT 2: PRIVATE NUISANCE

48.   Paragraphs 1–47 of this Complaint are hereby realleged and incorporated by reference herein.

49.   Defendant, Saint-Gobain, through its acts and omissions relating to its use, handling, discharge, and/or disposal of PFOA and other perfluorinated compounds, has contaminated plaintiffs' property and private drinking water supply wells with PFOA and other perfluorinated compounds, thereby unreasonably and substantially interfering with the plaintiffs' property rights, privileges, and use and enjoyment of property so as to constitute a private nuisance.

50.   As a direct and proximate result of the defendant's creation and maintenance of a private nuisance, plaintiffs have suffered damages in the form of real property damage, out-of-pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation, and inconvenience, for which defendant Saint-Gobain is liable in damages.

## COUNT 3:   TRESPASS

51.   Paragraphs 1-50 of this Complaint are hereby realleged and incorporated by reference herein.

52.   Defendant's intentional acts or omissions in its use, handling, discharge, and/or disposal of PFOA and other perfluorinated compounds has proximately caused PFOA and other perfluorinated compounds to enter the property of the plaintiffs resulting in contamination of plaintiffs' properties and drinking water supply wells with PFOA and other perfluorinated compounds, without plaintiffs' permission, thereby affecting plaintiffs' interest in the exclusive possession of their property.

53.   Defendant Saint-Gobain knew or reasonably should have known that its acts or omissions alleged herein could result in an invasion of plaintiffs' property interest, and that plaintiffs would not consent to this trespass.

54.   As a direct and proximate result of defendant's trespass, plaintiffs have suffered damages in the form of real property damage, out-of-pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience, for which defendant Saint-Gobain is liable in damages.

**COUNT 4:   BATTERY**


55.   Paragraphs 1-54 of this Complaint are hereby realleged and incorporated by reference.

56.   Defendant Saint-Gobain contacted the plaintiffs through the release of PFOA and other perfluorinated compounds into the plaintiffs' wells, soils, and groundwater supplies and, therefore, into the bodies of the plaintiffs.

57.   Defendant Saint-Gobain intended to contact the plaintiffs through its release of PFOA and other perfluorinated compounds into plaintiffs' wells, soils, and groundwater supply or were recklessly indifferent to whether such contact occurred.

58.   The contact between toxic PFOA and other perfluorinated compounds and the plaintiffs was harmful or offensive.

59.   As a direct and proximate result of the defendant's battery, plaintiffs have suffered damages, including the necessity for long-term medical monitoring, annoyance, upset, aggravation, and inconvenience for which defendant Saint-Gobain is liable in damages.


**COUNT 5:   STRICT LIABLITLY**

60.   Paragraphs 1-59 of this Complaint are hereby realleged and incorporated by reference herein.

61.   Defendant Saint-Gobain's manufacturing process utilizing PFOA and other perfluorinated compounds, as well as its handling, disposal and/or discharge of PFOA and other perfluorinated compounds, a hazardous and toxic chemical, constituted an abnormally dangerous activity for which the defendant is strictly liable.

62.   PFOA's and other perfluorinated compounds' toxicity, persistence in the environment and in the human body, and other properties pose an inherent and extraordinary danger of lasting contamination of property and of threats to human health.

63.   The contamination of the property, drinking water and bodies of the plaintiffs a probable and foreseeable consequence which resulted from defendant Saint-Gobain's use of PFOA in its manufacturing processes, handling, disposal and/or discharge of PFOA.

64.   As a direct and proximate result of defendant's abnormally dangerous activity, plaintiffs have suffered damages in the form of real property damage, out-of-pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, the necessity for long-term medical monitoring, annoyance, upset, aggravation,

inconvenience, for which the defendant Saint-Gobain is liable in damages

## REQUEST FOR PERMANENT INJUNCTIVE RELIEF

65.   Paragraphs 1-64 of this Complaint are hereby realleged and incorporated by reference herein.

66.   Plaintiffs seek equitable injunctive relief to compel defendants to establish and implement remedial measures sufficient to permanently prevent any future contamination.

67.   Plaintiffs seek injunctive relief to eliminate the current contamination of plaintiffs' property and/or their private drinking water supplies.

68.   While the plaintiffs can be awarded monetary damages for harm sustained thus far, plaintiffs seek injunctive relief that in the future defendant does not further contaminate plaintiffs' property with future releases of PFOA or any other hazardous chemical.

## RELIEF DEMANDED

WHEREFORE, plaintiffs respectfully request this Court to grant the following relief:

a.   Award plaintiffs damages in an amount greater than $1 million (one million dollars) sufficient to compensate them for real property damage, out-of-pocket expenses (including but not limited to paying for water if a new water line is installed), personal property damage, loss of use and enjoyment of property, diminution in property value, necessity for long-term medical monitoring, annoyance, upset, aggravation and inconvenience;

b.   Issue an injunction requiring the defendant to: 1) connect the plaintiffs' water supply into municipal water; 2) the establishment and implementation of remedial measures sufficient to permanently prevent PFOA's from further contaminating plaintiffs' drinking water supplies and/or property; 3) the establishment and implementation of long-term medical testing protocol for plaintiffs to monitor their health and diagnose at an early stage any ailments associated with exposure, inhalation or ingestion of PFOA's; and 4) the establishment of additional steps to be proven at trial, that are determined necessary to remediate plaintiffs' property to eliminate the presence of PFOA and other perfluorinated compounds;

c.   Award attorney's fees and costs and expenses incurred in connection with the litigation in this matter; and

d.   Award such other and further relief as this Honorable Court may deem just, proper, and equitable.

<u>JURY DEMAND</u>

**Plaintiffs request a trial by jury on all issues so triable.**

                          Respectfully submitted,


                          Darlene E. DeBlois
                          Living Trust,
                          Darlene DeBlois and
                          David True

                          By and through their attorney,

DATED:  October 20, 2016    <u>/s/Finis E. Williams, III, Esq.</u>
                          Finis E. Williams, III, Esq.
                          15 North Main Street
                          Suite 206
                          Concord, NH 03301
                          603-226-1919
                          #2750